## Theodore Knoll *v.* Charles F. Kelley, Commissioner of Motor Vehicles

Baldwin, O'Sullivan, Wynne, Daly and Phillips, Js.

Argued June 15—decided July 19, 1955

*Nelson Harris,* for the appellant (plaintiff).

*Louis Weinstein,* assistant attorney general, with whom, on the brief, was *John J. Bracken,* attorney general, for the appellee (defendant).

Daly, J. The defendant, the commissioner of motor vehicles, suspended the driving license and automobile registration of the plaintiff. Upon appeal by the plaintiff, the Court of Common Pleas rendered judgment dismissing the appeal. From that judgment the plaintiff has appealed.

The facts as stipulated by the parties are as follows: Whalley Avenue in New Haven is a public highway. It contains curbs which separate the portions devoted to vehicular traffic from the sidewalks used by pedestrians. At about 3:30 p.m. on August 22, 1954, the plaintiff was operating his motor vehicle easterly in traffic on Whalley Avenue near its intersection with Dayton Street. The overhead signal light, which was located above the portion of the highway used by moving traffic on Whalley Avenue, turned red. The plaintiff stopped his car behind five cars which had also been proceeding in an easterly direction. About ten seconds after his automobile had been stopped and while it was still stationary, a motor vehicle operated in an easterly direction on Whalley Avenue by Theodore E. Hillinski ran into the plaintiff's car, causing damage to it and injury to Mary Knoll and her daughter. Thereafter, the plaintiff received notice of an order of the defendant directing the plaintiff to deposit $680 with the defendant under the provisions of § 1051c[1]

---

[1] "Sec. 1051c. DETERMINATION OF AMOUNT OF SECURITY. SUSPENSION OF LICENSE AND REGISTRATION. POLICY OR BOND TO BE ISSUED BY COMPANY AUTHORIZED TO DO BUSINESS IN STATE. (a) If, twenty days after the receipt of a report of a motor vehicle accident within this state which has resulted in bodily injury or death, or damage to the property of any one person in excess of one hundred dollars, the commissioner does not have on file evidence satisfactory to him that the person who would otherwise be required to file security under subsection (b) of this section has been released from liability, or has been finally adjudicated not to be liable, or has executed a duly acknowledged written agreement providing for the payment of an agreed amount in instalments with respect to all claims for injuries or damages resulting from the accident, the commissioner shall determine the amount of security which is sufficient in his judgment to satisfy any judgment or judgments for damages resulting from such accident as may be recovered against each operator or owner. . . . (b) The commissioner shall, within sixty days after the receipt of such report of a motor vehicle accident, suspend the license of each operator and all registrations of each owner of a motor vehicle in any

of the 1953 Cumulative Supplement to the General Statutes. The plaintiff requested a hearing, and one was had on October 28, 1954. On that day, he was informed by the defendant that his right to operate motor vehicles had already been forfeited and that the registration certificate issued to him had been revoked.

The plaintiff claims that he was the operator and owner of a motor vehicle which was legally parked at the time of the accident; that therefore, under the provisions of § 1053c,[2] the requirements as to security and suspension specified in § 1051c do not apply; and that the court erred in concluding that the defendant properly suspended the plaintiff's driving license and registration. The sole question determinative of this appeal is whether the plaintiff's car was legally parked at the time of the collision.

The plaintiff relies upon the following definition, contained in § 2350 (30) of the General Statutes: " 'Parked vehicle' shall mean a motor vehicle in a stationary position within the limits of a public highway." Section 2350, the first of chapter 110, which also contains §§ 1051c and 1053c, provides at the very beginning: "Terms used in this chapter shall be construed as follows, unless another meaning is clearly apparent from the language or context

---

manner involved in such accident . . . unless such operator or owner or both shall deposit security in the sum so determined by the commissioner; provided notice of such suspension shall be sent by the commissioner to such operator and owner not less than ten days prior to the effective date of such suspension, which notice shall state the amount required as security. . . . (c) This section shall not apply under the conditions stated in section 1053c . . . ."

[2] "Sec. 1053c. EXCEPTIONS. The requirements as to security and suspension specified in section 1051c shall not apply: . . . (2) to the operator or the owner of a motor vehicle legally parked at the time of the accident; . . ."

or unless such construction is inconsistent with the manifest intention of the general assembly: . . ." The defendant maintains that the plaintiff's car was not legally parked but was being operated at the time of the collision. He contends that the provisions contained in § 2509 of the General Statutes clearly show that the car was not, and could not have been, legally parked. The claimed material portion of § 2509 is quoted in the footnote.[3] This portion was contained in § 1653 of the Revision of 1930. The precursor of § 2350 (30), defining "[p]arked vehicle," was not included in our statutes until 1939. Public Acts 1939, c. 6; Cum. Sup. 1939, § 478e. Furthermore, the definition in exactly the same words as it is now was not in the statutes until 1943. Public Acts 1943, c. 319; Sup. 1943, § 330g.

The presumption is that the legislature enacted what is now § 2350 (30) in view of the then existing relevant statute, which is now § 2509, and intended § 2350 (30) to be read with § 2509 so as to make one consistent body of law. *Hartley* v. *Vitiello,* 113 Conn. 74, 82, 154 A. 255. "The General Assembly is always presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them. And it is always presumed to have intended that effect which its action or non-action produces." *State* v. *Staub,* 61 Conn. 553, 566, 23 A. 924; *Coombs* v. *Darling,* 116 Conn. 643, 646, 166 A. 70; *Hartley* v. *Vitiello,* supra. Subsection

---

[3] "Sec. 2509. PARKING VEHICLES. No vehicle shall be permitted to remain stationary . . . upon the traveled portion of any highway except upon the right hand side of such highway in the direction in which such vehicle shall be headed; and, if such highway shall be curbed, such vehicle shall be so placed that its right hand wheels, when stationary, shall, when safety will permit, be within a distance of twelve inches from the curb. . . ."

(30) of § 2350, read together with § 2509, does not repeal the latter by implication. "The intent of the General Assembly in passing the act, as expressed by it, is the controlling factor, and in ascertaining this 'the application of common sense to the language, is not to be excluded.' *Rawson* v. *State,* 19 Conn. 292, 299." *State* v. *Bello,* 133 Conn. 600, 604, 53 A.2d 381. The act of parking a car on the highway is "the voluntary act of leaving a car on the highway when not in use." *Kastler* v. *Tures,* 191 Wis. 120, 124, 210 N.W. 415. The word "park" means something more than a mere temporary or momentary stoppage on the road for a necessary purpose. *Dare* v. *Boss,* 111 Ore. 190, 197, 224 P. 646. It is clear, as maintained by the defendant, that a motor vehicle is parked upon a public highway within the contemplation of § 2350 (30) only when it is placed upon the highway in the manner contemplated by the provisions of § 2509. It follows that the plaintiff's car was not "legally parked," at the time of the accident, within the meaning of § 1053c. The court did not err in dismissing the plaintiff's appeal.

There is no error.

In this opinion the other judges concurred.