## IN RE PETITION OF HERBERT ALLEN FLEMING AND ANOTHER TO ADOPT BARBRA CORLEE FLEMING. MORRIS HURSH v. HERBERT ALLEN FLEMING AND ANOTHER.

136 N. W. (2d) 109.

June 11, 1965—No. 39,787.

*Robert W. Mattson,* Attorney General, *James H. Gaffney,* Special Assistant Attorney General, and *Charles C. Johnson,* County Attorney, for appellant.

*Blethen, Ogle, Gage & Krause,* for respondents.

FRANK T. GALLAGHER, C.

This is an appeal from an order of the Juvenile Court[1] of Blue Earth County denying a motion to dismiss a petition for adoption.

On August 12, 1961, Barbra Corlee Fleming, the child in question, was born out of wedlock. Three days later her mother signed an affidavit consenting to the commitment of Barbra to the commissioner of public welfare and waived all notice of hearing in connection with the adoption of the child. On September 18, 1961, the Juvenile Court of Ramsey County appointed the commissioner as guardian and legal custodian of the child. Pursuant to an agreement, the commissioner placed the child in the home of the respondents, Herbert Allen Fleming and Marna Lee Fleming, his wife, for the purpose of adoption on March 12, 1963. On November 15, 1964, the Flemings were informed that Barbra was to be removed from their home. Two days later they filed a petition in the Blue Earth County Juvenile Court to adopt the child. On December 9, 1964, the commissioner moved the court to dismiss the petition on the grounds that he, as guardian of the child, refused his consent to her adoption and that without such consent the court had no jurisdiction to hear the petition.

After a hearing the court issued an order denying the motion to dismiss, stating that—

"* * * it further appears that the Commissioner of Public Welfare

---

[1] Minn. St. 260.111, subd. 2(d), provides in part: "* * * The juvenile court in those counties in which the judge of the probate-juvenile court has been admitted to the practice of law in this state shall proceed under the laws relating to adoptions in all adoption matters." The Blue Earth County Probate-Juvenile Court qualifies to act in adoption matters under the above-quoted provision of this statute.

has affirmatively refused to consent to the above Petition for Adoption. There being no evidence presented as to the fitness of the petitioners as adoptive parents, as to the reasonableness or unreasonableness of the refusal of the Commissioner to consent to the adoption, or as to the best interests of said child, it appears to the Court that the Motion raises the legal question as to whether or not the affirmative consent of the Commissioner of Public Welfare is mandatory and whether the Court has jurisdiction to proceed without such consent.

"It being the opinion of the Court that, while the recommendations of the Commissioner are entitled to great weight, the affirmative consent of the Commissioner to such adoption is not mandatory and that the refusal to consent does not deprive this Court of jurisdiction to grant the Petition for Adoption.

\* \* \* \* \*

"The Court recognizes that there is doubt and confusion as to the meaning of the law on this subject and hereby certifies to the Supreme Court of the State of Minnesota pursuant to the provisions of MSA, Section 605.09, Sub. (h) that the question presented by the Motion of the Commissioner of Public Welfare is important and doubtful."[2]

The main issue raised on appeal by the commissioner is whether the court has the power to grant the respondents' application to adopt the child without the guardian's consent.

The respondents contend that the issues are (1) whether the juvenile court has the power to consider their petition for adoption without the affirmative consent of the commissioner where the court had previously entered an order terminating parental rights and appointing the commissioner as "guardian and legal custodian of the child," and (2) whether the commissioner can arbitrarily and unreasonably refuse his

---

[2]Minn. St. 605.09(h) provides that an appeal may be taken to the supreme court: "If the district court certifies that the question presented is important and doubtful, from an order which denies a motion to dismiss for failure to state a claim upon which relief can be granted or from an order which denies a motion for summary judgment."

consent to the adoption under the provisions of the adoption placement agreement.[3]

The commissioner argues that the court erred in refusing to grant his motion to dismiss the petition for adoption because the court has no

[3]The agreement reads:

"ADOPTION PLACEMENT AGREEMENT

"THIS AGREEMENT BETWEEN THE Commissioner of Public Welfare of the State of Minnesota, represented by Ramsey County Welfare Department, an agency duly authorized to place children for adoption, party of the first part, hereinafter called the agency, and Herbert and Marna Fleming, husband and wife, residing at Good Thunder, R.R. #2, County of Blue Earth, State of Minnesota, parties of the second part, hereinafter called the foster parents, witnesses that in consideration of the agreement herein made by the foster parents, the agency places on 3-12-63, in the home of the foster parents, for the purpose of adoption a (female) child known to them as Barbara, born 8-12-61, Division of Child Welfare case number 65645.

"It is further agreed between the parties hereto:

"1. That the foster parent will:

"(a) Receive the child in their home and care for the child according to standards established by the Commissioner of Public Welfare with due regard for the emotional, intellectual, physical and spiritual needs of the child.

"(b) Accept the supervision of the child by the agency for the period of time prior to legal adoption.

"(c) Accept termination of the placement if, in the judgment of the agency, the best interests of the child will require this action.

"(d) Agree that until the decree of adoption has actually been granted, they will obtain proper authorization from the agency for surgery, or major medical treatment of the child. Further, they will notify the agency immediately, or on the next work day, of any illness which requires the attention of a physician.

"(e) Notify the agency of any change of address before such change takes place.

"(f) Obtain permission from the agency before taking the child out of the State.

"2. That the agency will:

"(a) Terminate the placement at any time at the request of the foster parents.

"(b) Give casework service. A caseworker will call in the home of the

authority to grant adoption without the consent of the child's guardian and the petitioners have not acquired such consent. He contends that the law requires that before the matter of adoption may be heard, the consent of the child's guardian must be in writing and must be duly filed in the adoption proceedings.

Minn. St. 259.24, subd. 1, so far as pertinent here, provides:

"No child shall be adopted without the consent of his parents and his guardian, if there be one, except in the following instances:

\* \* \* \* \*

"(f) The commissioner or agency having authority to place a child for adoption pursuant to section 259.25, subdivision 1, shall have the exclusive right to consent to the adoption of such child."

Minn. St. 259.24, subd. 5, provides in part:

"All consents to an adoption shall be in writing, \* \* \* and shall be filed in the adoption proceedings at any time before the matter is heard."

It is the further contention of the commissioner that since the court cannot even hear the petition until the consent is filed, it is clear that the lack of consent of the guardian can preclude the court from granting an adoption.

Adoption was unknown at common law and the right of adoption exists only by virtue of statute. In re Adoption of Jaren, 223 Minn. 561, 27 N. W. (2d) 656. It is the position of the commissioner that the statutes in effect at this time clearly define the measure of the court's authority as being inoperative until the guardian's consent is acquired and filed in the adoption proceedings. On the other hand, the respondents argue that the situation here is no longer one where the commissioner is free to place the child wherever he sees fit, inasmuch as a binding legal contract has been entered into between the parties.

---

foster parents during the supervisory period and may be called on for consultation at any time.

"(c) Give its consent to the adoption and assist in its completion at the end of the supervisory period if it is agreed by both parties that legal adoption is in the best interests of the child.

"Legal adoption cancels this agreement."

They agree that the contract is conditioned upon the best interests of the child, but claim that all they desire now is to show the court all the facts which will determine where those interests lie. It is their position that the contract provides that they will give up the child only "if, in the judgment of the agency, the best interests of the child will require this action."

It will be noted that paragraph 2(c) of the adoption placement agreement also provides that the agency will give its consent to the adoption and assist in its completion at the end of the supervisory period "if it is agreed by both parties that legal adoption is in the best interests of the child."

The respondents submit that the agreement makes it mandatory that the commissioner's motion to dismiss be denied and that the order of the lower court be affirmed. They claim that inasmuch as no evidence has been presented in the matter, the allegation in the petition that "it is to the best interests of the child to be adopted by petitioners" must be accepted as fact for purposes of this appeal. They argue also that the consent of the commissioner is not necessary to an adoption and that if such consent is unreasonably withheld the court can and should proceed without it.

In re Adoption of Kure, 197 Minn. 234, 266 N. W. 746, cited by respondents as controlling, involved an appeal by petitioners from a district court judgment which denied their petition to adopt a minor child. Shortly after its birth, the mother was committed to a state hospital for the feebleminded and the father petitioned the juvenile court to commit the child to the care of the state. Thereafter, that court committed it to the Minnesota Board of Control (predecessor of the commissioner). The facts in that case were similar in many respects to the case before us. There, the board shortly after the commitment placed the child in the home of petitioners under an agreement to pay for its care on a monthly basis. The child remained in their home for over 3 years and was then removed to an orphanage for observation. A few months later petitioners filed their petition for adoption. The father of the child consented to the adoption, but the board refused to do so on the sole ground that it had a rule forbidding the adoption of a child

by parties of a different religion than that of the parents of the child. The question before the court in that case was whether the consent of the Board of Control was a prerequisite to the adoption of a child committed to its care and whether that consent may be unreasonably withheld when the adoption appeared to be the only satisfactory solution of the child's welfare.

The section of the statute considered by this court when Kure was decided in 1936 was G. S. 1923, § 8626, from which Minn. St. 259.24, subd. 1, was derived and which contained similar but less exacting language. Section 8626 was construed in In re Adoption of Mair, 184 Minn. 29, 237 N. W. 596, to require the consent of the child's guardian as a mandatory prerequisite to the entry of a decree of adoption. In Kure it was construed to mean that the consent of the Board of Control was not an absolute prerequisite and that the trial court could therefore decree an adoption if it found such consent was unreasonably withheld.

The statute under consideration in In re Adoption of Zavasky, 241 Minn. 447, 63 N. W. (2d) 573, decided in 1954, was Minn. St. 1953, § 259.24, subd. 1, which was substantially equivalent to Minn. St. 259.24, subd. 1. In Zavasky we held that the term guardian, as defined in § 259.21, subd. 4, embraced within its meaning the custodial guardianship resulting from a final committal of dependent or neglected children to the care of an accredited association (Bureau of Catholic Charities) as provided for in Minn. St. 1953, §§ 260.11 and 260.12. We said that the statute clearly required the guardian's consent to an adoption and interpreted it to mean that the legislature intended to deprive the district court of jurisdiction to pass upon the merits of a proposed adoption if the guardian refused to consent even though the refusal was unsupported by any evidentiary showing that the proposed adoption was not in the best interests of the child. However, the court pointed out (241 Minn. 453, 63 N. W. [2d] 577):

"* * * Since we are not here directly concerned with the effect of a refusal to consent by the commissioner of public welfare, we need not now construe § 259.24, subd. 1(e), to determine if his refusal to consent is an absolute bar to an adoption."

In addition to other matters considered in Zavasky, we have here an adoption placement agreement entered into between the commissioner and the respondents which states in part that the agency will consent to the adoption of the child and assist in its completion at the end of a supervisory period if both parties agree that it will be in the best interests of the child. It is our opinion that the respondents might reasonably have understood from the agreement that if they received the child in their home, cared for her according to the standards established by the commissioner, and otherwise complied with the provisions of the agreement, after a supervisory period of living with and caring for her they might legally adopt her if both parties agreed that it was in the child's best interests. It appears that she lived with them under the supervision of the commissioner from March 12, 1963, until November 15, 1964, when they were informed that the child was to be removed from their home. There is nothing in the record to show why she was to be removed.

We conclude that under the agreement here the juvenile court had jurisdiction to consider the question of the best interests of the child. It seems to us that when the commissioner entered into such an agreement with the respondents, left the child in their home for 18 months or more, and then informed them that the child was to be removed, the prospective foster parents, who promptly petitioned to adopt the child, should have the right at least to be heard in court on the matter of whether the commissioner's proposed removal and his refusal to consent to her adoption was really in the best interests of the child. To hold otherwise would, in our opinion, give the commissioner an arbitrary power which, if he chose to use it, would leave no redress to the parties who had cared for and supported the child during the supervisory period under the impression, at least, that they could eventually adopt her. While we might assume that the commissioner, in ordering a removal of the child, would be acting in good faith and in her best interests, we think that the respondents should be given a chance in court to present evidence as to why they believe that it would be in her best interests to be adopted by them.

Affirmed.