STATE EX REL. LAUREL TRUE v. RANDALL A. LaKOSKY AND ANOTHER.

224 N. W. 2d 128.

October 25, 1974—No. 44516.

*Lynn S. Castner,* Special Assistant Attorney General, Commonwealth of Kentucky, *Lynn Mitchell,* and *Randall Tigue,* for appellant.

*Starr & Matykiewicz* and *Richard L. Matykiewicz,* for respondents.

Heard before Sheran, C. J., and Otis and Todd, JJ., and considered and decided by the court en banc.

TODD, JUSTICE.

Appellant appeals from summary judgment dismissing his petition for writ of habeas corpus for the return of a minor child, who is the subject of these proceedings, to the custody of appellant. Respondents obtained custody of the child from appellant in proceedings for adoption of said child, which proceedings are currently pending in the Juvenile Division of Ramsey County District Court. The proceedings are delayed pending the outcome of this appeal.

Appellant contends that the juvenile court lacks jurisdiction to proceed with the adoption proceedings because the Commissioner of the Kentucky Department of Child Welfare, who was the guardian of the minor child, has refused to consent to the adoption.

The parties have stipulated as to the facts and exhibits to be considered by the court. The child was born November 23, 1970, out of wedlock, in Fayette County, Kentucky. Upon petition of the natural mother, the Circuit Court of Fayette County on December 2, 1971, entered an order terminating parental rights and awarded full care, custody, and control of the child to the Department of Child Welfare, Commonwealth of Kentucky (department). The child was placed in the home of foster mother, Cora Turner, at age 5 days and remained until age 16 months.

Respondents contacted Lutheran Social Services of Minneapolis (agency) and requested a black male child for adoption. The agency made contact with the Kentucky Department of Child Welfare which suggested the subject child as a possible referral for adoption on February 25, 1972. The department accepted respondents as possible parents on March 7, 1972. On March 15, 1972, the Minnesota Department of Social Services gave its consent and approval to the agency to bring the child into Minnesota for the purpose of placing the child in respondents' home for adoption.

On March 20, 1972, respondents traveled to Kentucky and took possession of the child. On that date, several agreements were executed. A guarantee of responsibility was executed by the welfare departments of Minnesota and Kentucky. A certificate of placement of the child in respondents' home was executed by the agency. A placement agreement between the agency and respondents was executed. This agreement provided that "the adoptive parents are considered parents on placement day," but that the "adoptive parents do not have legal rights and responsibilities of parenthood until legal adoption." In addition, the agreement provided that they place the boy "with the intent that he be legally adopted" and agreed "to perform the described services to aid in his adoption." Also on that date the department by letter confirmed that the placement was made with the ultimate purpose of adoption.

Mrs. Cora Turner filed a service complaint with the department, alleging discrimination in her efforts to adopt the child. Pursuant to Kentucky procedure, a hearing on the allegations was held on May 17, 1972. The hearing board found that the department had discriminated against Mrs. Turner in not giving her full and fair consideration in her efforts at adoption.[1] On May 23, 1972, the department sent a notice to the agency inform-

---

[1] It was also stipulated that the department made an adoptive home study of Mrs. Turner and recommended that she be approved as an adoptive parent.

ing it of the above hearing and the board's unanimous decision that the boy be returned to Mrs. Turner for purpose of adoption.

During the subsequent 3 months, the department attempted to negotiate a settlement. However, respondents refused to return the child. On August 18, 1972, the department sent a formal demand to respondents requesting the return of the child. On September 1, 1972, respondents informed the department through the Minnesota Department of Public Welfare that they would return the child only pursuant to a court order. On September 21, 1972, the department notified the agency that it would not consent to the adoption. A similar notice was submitted to the district court on December 7, 1972. On October 6, 1972, respondents brought a petition for adoption in Ramsey County District Court. On November 2, 1972, the department filed a writ of habeas corpus. Hearing for both matters was set for December 13, 1972.

On June 25, 1973, the court entered its order granting respondents' motion for summary judgment and denying the relief prayed for in the department's writ. The court concluded that the agency, acting as agent of the department, entered into the adoption placement agreement and that under the agreement the Ramsey County District Court has jurisdiction to consider the question of the child's best interests and to hear the adoption petition of respondents.

■ The only issue before this court is the jurisdiction of the District Court of Ramsey County, Juvenile Division, to hear the adoption since the writ of habeas corpus would be properly discharged if such jurisdiction exists and we hold that it does.

Appellant seeks to equate domicile with jurisdiction. If we assume, arguendo, that the domicile of the minor child is in Kentucky, it is undisputed that his physical presence at all times material therein was in Minnesota. Jurisdiction of a state extends to all persons within its territorial limits regardless of the place of their domicile. In re Pratt, 219 Minn. 414, 427, 18 N. W. 2d 147, 154 (1945).

The Minnesota statutory adoption scheme, Minn. St. 259.10 through 259.32, does not once mention domicile as a jurisdictional requirement. The only jurisdictional requirement in our statutory scheme relates to the residence of the petitioning adopting parents, which is clearly met in this case.

We hold that where the petitioning adopting parents meet the statutory jurisdictional requirements of our adoption statute and where the minor child involved is physically present in the State of Minnesota, the fact that the technical domicile of said minor child may be in some other state does not divest the jurisdiction of our district court to proceed to conduct adoption proceedings under our statute.

■ Appellant further contends that the district court was without jurisdiction since the legal guardian of the minor child had clearly indicated his refusal to consent to the adoption. Our recent decision in Ritchie v. Children's Home Soc. of St. Paul, 299 Minn. 149, 216 N. W. 2d 900 (1974), disposes of this argument. We there held (299 Minn. 155, 216 N. W. 2d 903):

"* * * We hold that the Fleming doctrine [2] applies to both public and private agencies, and that when a private agency, as guardian, has entered into a placement agreement relative to the adoption of a child and then refuses to give or withdraws its consent to the adoption, Minn. St. 259.24 does not deprive the trial court of jurisdiction to hear the matter and to grant the petition if the court finds that it would be in the best interests of the child to do so." [3]

■ Appellant further claims that the judgment of the district court violated public policy and denied equal protection of the laws as guaranteed by the Fourteenth Amendment of the United

[2] In re Petition of Fleming, 271 Minn. 337, 136 N. W. 2d 109 (1965).

[3] Minn. St. 259.24 was amended by L. 1974, c. 66, § 4, by the addition of subdivision 7, which reads: "Withholding consent; reason. Consent to an adoption shall not be unreasonably withheld by a guardian, who is not a parent of the child, by the commissioner or by an agency."

States Constitution in that it would give judicial support to an unlawful discrimination. We reject this argument. Mrs. Turner will have a full opportunity to present whatever evidence she desires in the adoption proceedings relative to the best interests of the child. We are not calloused to the genuine concerns of Mrs. Turner in the predicament in which she has been placed by the unfortunate actions of the State of Kentucky. However, since the minor child is now under the jurisdiction of the State of Minnesota, we must follow our statutory scheme which is solely directed to the determination of the best interests of the child.

Our court in In re Adoption of Jaren, 223 Minn. 561, 569, 27 N. W. 2d 656, 661 (1947), quoted with approval language appearing in 11 Minn. L. Rev. 605, and that statement is particularly applicable to the situation involved in this case:

"* * * '[T]he welfare of the child ought to be the matter of paramount concern, to which—in the event of conflict—every other interest must give way.' "

Affirmed.