575 P.2d 326

In the Matter of the APPEAL IN PIMA
COUNTY, ADOPTION OF B–6355
AND H–533.

J. B. CLARK, Jr., Appellant,

v.

James Austin CURRAN and Carolynn
Ann Curran, Appellees.

No. 2 CA–CIV 2144.

Court of Appeals of Arizona,
Division 2.

Jan. 25, 1977.

Rehearing Denied March 4, 1977.

Review Granted April 5, 1977.

Hocker & Gilcrease, Ltd. by Glynn W. Gilcrease, Jr., Tempe, for appellant.

James D. Whitney, Tucson, for appellees.

Lieberthal & Kashman, P. C. by David H. Lieberthal, Tucson, for minor children.

## OPINION

RICHMOND, Judge.

This is an appeal by J. B. Clark, Jr., from an order of the juvenile court granting the adoption of two of his sons and denying habeas corpus as to them. Considering the evidence and possible inferences therefrom in a light most favorable to upholding the judgment of the lower court, the pertinent facts are as follows.

Appellant is the natural father of Joseph Don Clark, Thomas Jackson Clark and Philip Ray Clark. The three sons were born as issue of his marriage to Edith Clark, now Edith Caballero, the natural mother of the children. In July, 1966, a decree of divorce was entered in Tarrant County, Texas, which awarded custody of the children to the natural mother, with rights of reasonable visitation to appellant.

During the following years, the children spent several extended periods of time with appellant and his present wife because of financial difficulties encountered by Ms. Caballero. About August, 1972, his ex-wife again sent the children to live with appellant, and they remained with him until July, 1973. Ms. Caballero testified that the primary reason for leaving the children with appellant was his failure to provide her with child support.

Ms. Caballero further testified that in June or July, 1973, she went to appellant's home, was informed by appellant's present spouse that the children could no longer be properly cared for there, and was asked to take the boys. Ms. Caballero took the children and caused them to be put in the temporary custody of the Texas State Welfare Department without informing appellant of the placement. Thereafter, Ms. Caballero retrieved the three boys from the Children's Shelter and sent them to Arizona to the home of appellees with the intent that they be adopted by appellees. The placement with appellees was made with the consent of the natural mother and the acquiescence of the Texas State Welfare Department.

Upon learning of the transportation of his sons to Arizona, appellant filed a motion for contempt in the District Court of Dallas County in order to enforce his rights of visitation. Thereafter appellees petitioned in Arizona for certification as acceptable adoptive parents, and were appointed temporary custodians of the children. A petition for adoption eventually was filed on March 4, 1975, and was amended on September 9, 1975. Consent to the adoption was received from the natural mother but a refusal to consent was filed by appellant. A full hearing on all matters was held commencing September 9, 1975, in the Pima County Juvenile Court with the natural father present, and resulted in an order granting the petition to adopt as to Tom and Philip, denying the petition as to Joe, and granting appellant habeas corpus relief as to Joe.[1] The lower court found, inter alia, that the children were neglected and dependent. A motion for a new trial was denied, and this appeal followed.

Three questions have been presented for our determination:

1. Were the appellant's due process rights violated where he received no notice of the guardianship or temporary adoption matters, and where the unamended petition to adopt did not allege that his sons were neglected, abandoned or dependent, or that his consent to adopt was unnecessary?

2. Did the lower court lack jurisdiction of the petition to adopt where the juris-

---

1. Joseph Don Clark, age 12, stated in open court that he chose not to be adopted and asked to return to Texas to reside with his father. See A.R.S. § 8–106(B). As a result thereof, the court denied adoption as to Joseph and ordered that he be placed in the legal custody of his father, although the court stated that his interests would have best been served by allowing the adoption.

diction of a Texas court had been invoked in a contempt proceeding?

3. Was sufficient evidence presented to the court below to show that the Clark children had been neglected, abandoned or were dependent?

■ A fourth question raised by appellees' motion to dismiss is whether this court has jurisdiction, in light of the recent decision in *Matter of Maricopa Cty., Juv. Act. No. JS–834*, 26 Ariz.App. 485, 549 P.2d 580 (1976). There, Division I of this court indicated through dictum that Rule 25, Supreme Court Rules of Juvenile Court, vitiates A.R.S. § 8–122, which states that appeals from adoption orders shall be as in other civil cases.[2] While we agree with the principles enunciated in *JS–834*, we believe that the case is not determinative in the instant matter. It is the general rule that unless exceptional circumstances are shown, court decisions will be given only prospective application. *State v. Zaragoza*, 24 Ariz. App. 278, 537 P.2d 1336 (1975). In determining whether to give a decision prospective or retroactive application, the purpose of the decision, reliance on a prior rule of law, and the possible effect upon the administration of justice are factors which must be considered. *Thompson v. Hagan*, 96 Idaho 19, 523 P.2d 1365 (1974); *see also, State v. Maloney*, 105 Ariz. 348, 464 P.2d 793 (1970); *City of Tempe v. Del E. Webb Corporation*, 14 Ariz.App. 228, 482 P.2d 477 (1971).

■ In the case *sub judice*, the notice of appeal was filed February 2, 1976, whereas the Division I decision was filed on May 13, 1976. As intimated in *Matter of Maricopa Cty., Juv. Act. No. JS–834*, supra, it has long been the practice of this court to handle adoption and termination of parental right matters in procedurally the same manner as civil appeals. We believe that appellant had the right to rely on this practice. In *JS–834*, Division I acknowledged the confusion and conflict which existed in the area, and stated that the appeal spot-lighted " . . . the necessity for revision to guard against the pitfalls to innocent litigants who are trapped in their insufficiencies." 26 Ariz.App. at 488, 549 P.2d at 583.

Thus, in order to find that the decision applied retroactively, we would be forced to ignore both the prior reliance in practice of attorneys before this court and the purpose of the decision itself. We find that it is not in the best interests of justice to follow such a course, and hold that the principles of *JS–834* do not govern the case at bar.

Appellant's initial contention is that his due process rights were violated because of lack of notice in both the petition to adopt and the guardianship and temporary adoption proceedings. It is claimed that these preliminary proceedings were instrumental in strengthening appellees' position while eroding appellant's right to maintain, protect and preserve the parent-child relationship.

■ First, as to the temporary adoption proceedings, it is apparently appellant's position that he should have received notice of the certification proceedings. The primary purpose of the preadoption certification and investigation as provided in A.R.S. § 8–105 is to inquire into the fitness of the prospective *adoptive* parents, and the suitability of the child's placement with them. It is not a termination proceeding. The only notice provision in A.R.S. § 8–105 applies to the applicant who has been certified as non-acceptable by the court. Due process does not mandate additional notice requirements at this phase of the proceedings.

■ The question of guardianship presents a somewhat different problem. The natural mother nominated appellees as guardians of the persons of the three boys and an order appointing guardian was signed. The court believed that because the minors had been placed with appellees by both the natural mother and the Dallas

---

2. The appellant's notice of appeal would be untimely if the 15-day time period prescribed by Rule 25 were followed.

County Child Welfare Unit, notice to the natural father could be dispensed with. Even assuming that appellant should have received notice, we do not find the deficiency so prejudicial as to vitiate the adoption proceedings after a full hearing.

■ Appellant next contends that the petition to adopt failed to give notice that his children were neglected or that his consent to adopt was unnecessary, in compliance with A.R.S. § 8–109(A)(8) and our holding in *Lee v. Superior Court, In and For County of Pima,* 25 Ariz.App. 55, 540 P.2d 1274 (1975). Again, we disagree. Although the original petition for adoption was defective in several respects, we find that it was cured by the amended petition, which stated:

> "It is the position of the petitioners that it is in the best interests and best for the welfare of the children that the consent of the father not be required. It is the further position of the petitioners that the natural father has neglected the said children in the past."

Appellant's reliance on *Lee v. Superior Court, In and For County of Pima,* supra, is misplaced. There, the natural mother refused to consent to the adoption but made no effort to resist the action. There never were any contested proceedings, nor was there an amendment to indicate that consent was not necessary. Under those circumstances, we held that the mother did not receive the requisite notice and that the adoption decree was void.[3]

> "The legislature intended that the natural parents have an opportunity to be heard before having their rights to their child declared forfeited."

25 Ariz.App. at 58, 540 P.2d at 1277. In the case at bench, in addition to the amended petition, a full hearing was in fact held and the natural parents appeared and were heard in an adversary context.

Appellant's second contention is that the juvenile court lacked jurisdiction of the petition to adopt because the continuing jurisdiction of the Texas court had been invoked to enforce his rights of visitation. The cases cited by appellant in support of this proposition are inapposite, however. In *Simmons v. Superior Court,* 96 Cal.App.2d 119, 214 P.2d 844, 849 (1950), the California court stated:

> "The rule which forbids a later action in the same state between the same parties involving the same subject matter rests upon principles of wisdom and justice, to prevent vexation, oppression and harassment, to prevent unnecessary litigation, to prevent a multiplicity of suits,—in short, to prevent two actions between the same parties involving the same subject matter from proceeding independently of each other. *We think there is no distinction in reason or difference in principle between a case where a later action between the same parties involving the same subject matter is commenced in the same state and a case where a later action between the same parties involving the same subject matter is commenced in another state.*" (Emphasis ours)

It is obvious that in the instant matter both the parties and the causes of action were different. At no time was there a showing that an adoption petition had ever been filed in Texas. Rather, the jurisdiction of the Pima County Juvenile Court arose from the fact that the Clark children were present within the state, A.R.S. § 8–102; appellees were adult residents of this state, A.R.S. § 8–103; and appellees resided in the county where the adoption proceedings were brought, A.R.S. § 8–104.[4]

■ It is well settled that an adoption proceeding is not barred merely because a competent court of another jurisdiction has validly exercised its authority by awarding custody of the child sought to be adopted, when the court before which adoption is

---

**3.** We note that A.R.S. § 8–106(C) contains a built-in safeguard for a nonconsenting parent. Actual notice to all parties adversely affected is required before the court may exercise its discretion and waive the consent requirements.

**4.** We note that the Texas custody order did not expressly prohibit Ms. Caballero from removing the children from that state.

sought otherwise has jurisdiction to proceed. *Modacsi v. Taylor*, 104 So.2d 664 (Fla. App.1958); *In re Burton's Adoption*, 147 Cal.App.2d 125, 305 P.2d 185 (1956). An adoption proceeding and a custody proceeding in a divorce, being entirely separate and distinct actions, are not dependent on or subject to each other. *Lee v. Kepler*, 197 So.2d 570 (Fla.App.1967); *Modacsi v. Taylor,* supra; *In re Burton's Adoption,* supra. Although the technical domicile of a minor child may be in some other state, if Arizona statutory requirements pertaining to .adoption are satisfied, our superior court may conduct adoption proceedings pursuant to the applicable statutes. See, *State ex rel. True v. LaKosky*, 224 N.W.2d 128 (Minn.1974). Consequently, we hold that the Texas custody order giving rise to the subsequent contempt proceedings did not deprive the juvenile court of jurisdiction.[5]

Lastly, appellant attacks the sufficiency of the evidence to support the juvenile court's findings that his sons were neglected or dependent. It is well settled that a parent who has never consented to the adoption may not, over his objection, be deprived of his child without a showing of neglect, unfitness or dependency. *In re Adoption of Hyatt*, 24 Ariz.App. 170, 536 P.2d 1062 (1975). Before the juvenile court could consider what disposition it could make in the best interest of the children, it was required first to determine that they were dependent or neglected. See *Caruso v. Superior Court in and for County of Pima*, 100 Ariz. 167, 412 P.2d 463 (1966). The findings that the boys were neglected and dependent are based upon appellant's financial circumstances, and his failure to seek adequate medical help for Tom, who had been deaf since birth, or to learn the sign language necessary to allow Tom " . . . the opportunity to learn the same so that he could reasonably communicate with other people." We do not believe this evidence is sufficient.

The expression "neglect" has no fixed meaning, but varies as the context of circumstances changes. *In re Pima County, Juvenile Action No. J–31853*, 18 Ariz.App. 219, 501 P.2d 395 (1972). It has, however, been generally defined as a disregard of duty owing to indifference or willfulness. *In re Pima County, Juvenile Action No. J–31853,* supra. The circumstances prior to the removal of the three children to Arizona include the fact that their legal custody had been awarded to their natural mother in 1966 but she frequently left them with appellant for extended periods of time because of his failure to provide her with child support. When the children were with their natural mother, appellant visited them frequently. When their natural mother deposited them with or retrieved them from their father and his present wife, she never entered the house, but testified that when she picked them up in 1973 they were dirty, smelled bad, and their clothes were ragged. Surely this, without more, cannot afford a basis for the trial court's conclusion or the parental rights of many of us are in jeopardy.

Other evidence regarding their surroundings when the children were in the de facto custody of appellant came from the eldest boy, Joe, who testified that they were treated well, adequately fed and clothed, and never went without a meal. While the living standard in appellant's household unquestionably seems meager when contrasted with the beneficial environment provided by appellees, the comparison is not material for the purpose of establishing dependency or neglect in proceedings of this nature. Parental rights cannot be terminated merely because the natural parent is unable to furnish surroundings which would enable the child to grow up as we would desire all children to do. *Matter of Appeal in Pima County, Juv. Act. No. S–111*, 25 Ariz.App. 380, 543 P.2d 809 (1975).

---

5. We further reject appellant's jurisdictional argument pertaining to the alleged defective petition for the reasons previously set forth in our response to the first question presented for review.

The foregoing disposes of the question of terminating appellant's parental rights as to Philip, but there remains the circumstance of Tom's deafness. The undisputed testimony of appellant and his present wife was that after appellant obtained de facto custody of the boys, they enrolled Tom in the Tarrant County Day School for the Deaf, and took him for testing to Jack Jones Hearing Center in Fort Worth. When they were confronted with the fact that they should help the boy at home in learning sign language, they obtained a book from the school and appellant's wife worked with Tom and "learned right along with him." It is clear that they could and should have done more, but there is no evidence that their failure to do so was owing to indifference or willfulness.[6] Appellant's failure in the future to try to emulate the practices that have contributed to Tom's development during his placement with appellees, with knowledge of Tom's progress while in their care, might well constitute neglect. The evidence at the hearing, however, did not warrant termination of the parent-child relationship.

As this court said in *In re Adoption of Hyatt,* supra:

"The state and its courts should do everything in their power to keep the family together and not destroy it. The [parent] should be given the opportunity to raise this child. If, for some reason, there is difficulty encountered in [the foreign state], agencies are available which can give the family the needed support while preserving its unity."

24 Ariz.App. at 176–177, 536 P.2d at 1068.

The order of adoption is set aside with directions to deny the petition for adoption and issue a writ of habeas corpus as to Thomas Jackson Clark and Philip Ray Clark.

Reversed.

HOWARD, C. J., and HATHAWAY, J., concurring.

---

6. The pre-certification report contains a letter to the juvenile judge dated September 10, 1975, in which a public welfare supervisor on behalf of the Texas State Department of Public Welfare states that its " . . . investigation indicated that there was not sufficient evidence of abuse or neglect to justify an attempt by us to terminate the rights of either parent."